Thank you. Judge Bumate, Judge Wardlaw, Judge Gleeson, good morning. My name is Troy Foster and I represent the appellant, Kelly Standorf, in this case. I'd like to reserve two minutes for rebuttal, if I may. This case is a wage case which is as straightforward legally as the misclassification is egregious and willful. And the district court got the judgment wrong in two areas on these motions, cross motions for summary judgment. First, the district court failed to view the evidence in light most favorable to Ms. Standorf in looking at Christie's motion. And second, in looking at our motion, the district court failed to even engage in the economic realities test that the circuit requires it to. If it had, the district court would have found that there is no genuine issue of a fact that's triable. And it would conclude that Ms. Standorf was an employee as Christie's admits that she was and engaged in those duties and that she was never compensated for those employee like duties. The only issue that would remain would be the damages, the timing and amount of damages for trial. So we would ask that the court reverse the district court's order and remand for trial on those issues only. So counsel, the district court said that your client didn't present any evidence that she has worked as an employee during the two year time period. Assuming the two year time period is correct, what's the evidence that shows that she was an employee? And specifically, can you address the text message that's in Ms. Standorf's affidavit? Yes, absolutely. So thank you, Judge Bumate. There is a plethora of evidence in the record before the district court that was cited. And as the court knows, there were three sets of motions that were before the district court because some were filed at different times. But in all of the briefs that Ms. Standorf cited, there was evidence, there was timely evidence as well as background evidence. But to your point, Judge Bumate, the evidence, the first piece of evidence would be that text message from 2018 where her manager says to her, good job holding down the fort because they earned $21,000 that night because of her efforts. So that was the Christie's manager? Correct. And holding down the fort, I mean, that's hard to reconcile with an independent contractor. Right, I think so. And I think it coincides with her testimony, which is unequivocal, that she engaged in all of the activities from 2005 to her termination in 2018, with the exception of giving up some of those responsibilities for two week periods when Mr. Cooper interceded. Mr. Cooper, who knew she was engaging in these employee-like activities, interceded, and it's undisputed that he told her to stop it. And she did, but the managers, again, weeks later, told her to resume those activities, which were actually management activities. Other evidence, Judge Bumate, comes from Christie's themselves. Mr. Cooper, in his deposition testimony, when asked, why did you terminate Ms. Standorf, his words are very clear. Mr. Cooper said, I wanted her out of the club because she was way too in the company's business, not because he wanted to terminate the relationship or thought that this independent business inside his club wasn't fruitful anymore. He did not like that she was performing managerial and employee-like tasks, and he got rid of her for it. And that was in 2018 when he made that decision himself to eliminate that position and terminate her. In addition, if you look at some – So the other question, unless others have any – the real question I have is, what's the proof of willfulness? Yes, Your Honor, I think the proof of willfulness ties back from not only – and it goes to – it was Christie's evidence, which if you look at their documentation, their regulation, their handbook, says about independent contractors. It's their document on Christie's paper and documentation. And it says – All that proves is that they knew about the regulations. I think it goes a bit more, Your Honor, because it says their intent. On Volume 8, 1835-36, it says, quote, The idea here is to avoid the appearance that the club is controlling the entertainers in such a way that they risk losing independent contractor status. It does show they knew about it, but it also shows they intended to try to avoid it by using Ms. Standorf, the house mom, as an intermediary. And that would be a fine use. And maybe that was a good business decision on their part to make all of the entertainers independent contractors who they did have sign an independent contractor agreement by using Ms. Standorf as an intermediary. But it was not a right – I'm sorry, how does what you just read prove that they used Ms. Standorf as an intermediary? Because in the other documents and evidence further down in those documents, again, on Christie's paper, it tells the entertainers to pay the house mom to enforce Christie's rules because those may impact their licensing, whether it's their alcohol license or others, and to do those activities because the managers could not. And that's why they put her there. They had her audition, hire, fire. We're on summary judgment, right? Yes, Your Honor. So you don't have to prove willfulness. You just need to show there's a genuine issue of fact, material fact as to willfulness. How have you shown that? Yes, Your Honor. I think if you look at all of the evidence, even if you look at just Ms. Standorf's testimony, along with Keisha Walker's testimony, who also worked there in 2018, Ms. Standorf unequivocally testifies that she performed these duties. They knew that she was performing them and continued to utilize her in this way. And Ms. Walker affirms this. She observed it. She heard managers tell her to do these tasks. And Ms. Walker was there until 2019. That's timely as well and withstands summary judgment. I think, Judge Wardlaw, to your point, it could be a very easy mem dispo, right, in remanding to the trial court. We're asking just a bit more in that we believe that the court also erroneously denied our motion. But, counsel, what's the willfulness modifying? You're just saying that they willfully told her to do the job, to be an employee. I thought it's willfulness to violate the FLSA. Correct. Willfulness to violate the FLSA. So all the evidence you just said is evidence showing that they told her to do employee work. I think that, combined with their knowledge that the employee work was employee work and that they were not compensating her at all, is what the courts look at as willful. Are you saying you're seeking summary judgment on the willfulness that even if you construe all the facts for your opponent? I wish, Your Honor. Judge Gleeson, I don't think we can ask for that. I do think that we can ask for partial summary judgment in that Ms. Standorf was an employee and was not compensated for those employee tasks. We don't get that third piece, which is was it willful and the timing, as well as damages. I think that's where we don't get judgment. I think that in focusing on one of the policy aspects, again, the argument and the admissions go further. It is in looking at the tasks. It's not just that Ms. Standorf somehow came upon these duties. She was informed how to perform them because she would know otherwise. She did them repeatedly. And the longevity here is she did it for 14 years. It was not something that there was a break in other than those two-week breaks for short times and things that she did not, in fact, give up all the way. So I think that that makes the case somewhat unique, but there is nothing from a legal standpoint, at least from my view, anything unique. The district court failed to apply the economic realities test and also failed to view the facts in light most favorable to Ms. Standorf. I'll reserve the reigning balance. Thank you. Thank you, counsel. Good morning, Your Honors. My name is Amy Sells. I'm here on behalf of the Appalese. Your Honors, I think that this is a very simple case concerning the application of the statute of limitations under the FLSA. For 16 years, Kelly Standorf conducted her own independent business in my client's club for free. And at one point, she made as much as $8,000 per month. After that 16 years, my client asked her to pack up her things and leave the club. And about a year later, she filed her FLSA claim. Here, the district court agreed with us that the two-year statute of limitations under the FLSA applies. So we're going two years back from the date of the complaint. But this means that Ms. Standorf had to establish that a violation occurred within that two-year period. And because she simply did not do that, the district court dismissed her FLSA claim on summary judgment. There's four reasons why this court should affirm the district court. First, Standorf relied exclusively— Counsel, before we get to that, could you address that text message, which was within the two-year statute of limitations period? And was that text message attached to her affidavit? Correct. Apparently, it's from the Steve manager. Thank you for a great night. You held down the fort. Okay. In reviewing the record, I did not see that there was an attachment to her affidavit. But obviously, it must have been in there because you see it. I would say that that text message is consistent with her house mom duties. Holding down the fort, you would let an independent contractor hold down the fort of your own business? Well, the difficulty there is that Ms. Standorf didn't conduct any depositions of the managers. And so we don't have—I don't believe that we have evidence of what he intended to mean by holding down the fort. And so all that we know is that she was conducting her house mom duties in 2008 in the club. It's difficult to discern. Well, under the Summer of January standard, we would give all inferences in favor of Ms. Standorf. It's hard to say that that can't be construed as you're being an employee or holding down the fort. Well, I don't recall in the briefing either that Ms. Standorf ever cited to that particular text message as evidence. That's true. And so that actually leads to the next issue is that she argues that we never put her on notice of this statute of limitations argument. And she says that the first time that we raise it is in OutWest Ventures' reply in support of the motion for a summary judgment, which was the last brief that was filed in the MSJs. But that's simply not true. A good nine months prior to that, in our motion for summary judgment, we cited to a case called Lemley v. Graham County for the proposition that plaintiff cannot recover damages for violations accrued before the statutory period. That's at ER 834. Then in response to Standorf's motion for summary judgment a couple months later in May, we cite to the same case for the same proposition, and that is at ER 1565. Also at that same time in our controverting statement of facts in response to Standorf's motion for summary judgment, we objected to 17 paragraphs in Ms. Standorf's statement of facts, and we characterized that objection as, quote, defendants object to the materiality of the evidence that occurred beyond the applicable statute of limitations. So for Ms. Standorf to say that she was blindsided by the statute of limitations argument is simply untrue. The next reason why the court should affirm is because Standorf failed to challenge our argument that she has no claim within the statutory period. In her reply in support of her motion for summary judgment, she actually acknowledged our statute of limitations argument, and she said that defendants argue that, quote, she should not be able to rely on evidence that predates June 12, 2017, two years before the complaint was filed. So she acknowledges that we made the argument there, but yet she doesn't refute it. And rather than point to specific evidence from within- During that motion, the big issue is willfulness. Can you explain why there is no genuine issue of material effect on willfulness? Well, I think that we don't even get to that analysis, again, because there is this deficit of evidence. If we're talking about the three-year statute of limitations or we're talking about the two-year statute of limitations, there's simply- Ms. Standorf hasn't pointed to any sort of evidence from within either of those statutes. I would tend to disagree with that text message. It's kind of hard to avoid that. But go ahead. But the court did say- But assuming that there is evidence within, you know, the two, the three- Well, assuming that the question is, is it three years or two years? Why should it be two years instead of three? Well, the court did say that it was straining to find willfulness because there was- Both of the parties agree that Ms. Standorf was permitted to conduct her own independent business within the club. And they were both aware of what the parameters of that agreement was and that that continued for 16 years. And Ms. Standorf never said a peep in terms of objecting to the agreement between the parties as to what she was doing at the club. What's your response to your opposing counsel that said, you know, there's clearly business regulations acknowledging the FLSA problem. And then, you know, assuming in light of favor of Ms. Standorf that she did ask her to do employee work. I would read that- Are we talking about the guidelines that recognize that we don't want to overstep the bounds and give independent contractors managerial- I think that what that does is actually undercuts their argument. And it shows that we recognize that we're not going to treat Ms. Standorf or anyone else similarly situated with her in that sort of a way. So not only did Ms. Standorf recognize in her briefing that we had made that argument, but she went so far as to double down and say it doesn't matter, essentially, that we did not point to any sort of evidence within the statutory period because we should be able to look to evidence that is beyond the statutory period. So I think that Ms. Standorf was so fixated on trying to maximize her potential damages by looking beyond the statutory period that she neglected to focus upon occurrences from within the period. I thought your opening summary judgment briefing was focused on a different limitations period than eventually everybody seemed to agree on, which was tied into the first amended complaint and not the initial action. And if you use that first amended complaint, isn't it true that then that's after the date that she separated from the company? Right. If I understand your question correctly, that the statutory period would shift even further out. That's correct. The next reason why I think that the court should affirm is that she failed. Standorf failed to challenge our argument that she has no claim within the statutory period. Then the next is that she also failed to rebut our evidence, which was within the statutory period. And we had evidence coming in via declaration from the various managers at the club stating that they did not treat her like an employee. And they explained that she was prohibited from doing certain tasks. And in terms of the economic realities test, because I see I don't have very much time left, Standorf is arguing that the court should have applied the economic realities test before determining whether or not there was evidence from within the statutory period. Standorf doesn't cite to any authority for that proposition because, and I think rightfully so, there should not be any authority out there for that proposition. It begs the question because whether or not there is evidence within the statutory period, that's a threshold issue that the court must first determine before it can move on to the merits of an issue such as the economic realities test. And so obviously when applying that test, the court needs to know what evidence it's looking at. And if there's no such evidence from within the statutory period, the analysis cannot take place. And with that, your honors, I have nothing further. Thank you. Thank you, counsel. Thank you. I have two quick points. The first being that Ms. Standorf never acknowledged, we acknowledge what the law is, the statute of limitations is either two or three years. There is never an acknowledgment. And in fact, there's testimony and evidence that is within the time period, whether it was two or whether it was three years. Secondly, the happily conflates to two issues. One is whether background evidence is wrong, which, of course, it is under United Airlines versus Evans. And this court's found in Anderson v. Reno in Title 7 ADA cases and FLSA cases. It's relevant if there is a timely there's timely evidence that's attached to it as well. Here, the evidence is Ms. Standorf was told over and over prior to the FLSA statutory period running was directed what to do. That is the untimely evidence. But the timely evidence is what she did. She testified that she did all of those things and others confirmed it during the statutory period. That doesn't make the old evidence or the untimely evidence actionable, but it makes it relevant. And that's all that we were saying here. Thank you so much. And if there are no further questions. Thank you. Thank you, counsel. This case will be submitted.
judges: WARDLAW, BUMATAY, Gleason